The first case this morning is Hyatt v. Kappos. Mr. Panner? Chief Judge Rader, and may it please the Court, I'd like to focus this morning on two general points. The first is that Section 145, unlike many modern statutes limiting judicial review to the record before the agency, has been understood for more than a century to authorize a patent applicant to introduce new evidence in keeping with traditional equity practice. Essentially, the only argument that the government offers to the contrary is based on the claim that an action under Section 145 is analogous to a bill of review, which was essentially a request for rehearing directed to the Court that it issued a decree, not an original action in equity. And that argument is not only without any precedent whatsoever to support it, but it is directly contrary to the many cases interpreting Section 145 and its predecessors to permit the introduction of evidence as in any other case within the District Court's original jurisdiction. So in your view, are there any limitations as to the ability to introduce new evidence? The limitations on new evidence would be derived from traditional equity practice. The limitation that we've pointed to that could potentially be applicable in this case and that the panel, I think, was perhaps alluding to in its reliance on merit is the possibility of an equitable estoppel, where an applicant takes a position on a factual issue before the agency that is inconsistent with a position that it attempts to support before the Court. That could lead to an estoppel, which would prevent the introduction of evidence inconsistent with a factual position taken before the agency. And, of course, the federal rules of evidence would also impose limitations on the introduction of evidence as they would in any other case. Is that one of the issues, legal issues, new legal issues that could be raised under 145? Well, Your Honor, I don't think that issue is directly presented here, let me say first of all. The rule of conservolite under Section 146, which indicated that new issues that were not before the agency could not be raised in an original action under that section, I think it does not necessarily apply under Section 145. So does that mean that, in your view, new issues could be raised in the district court proceeding? We did not take that position before the district court because... What's your view about it? My view about it is that the proper rule is that new issues should be raised, should be able to be raised in a Section 145 action within reason, certainly. Obviously... Well, you don't have new issues because you are, in effect, quote, appealing or bringing a new action from a rejection by the Patent Office. In conservolite, you had an interference where one could attack the other parties, the patentability of the other party's patent. It's quite a different story from what we have here. That's exactly right, Your Honor, and that, I think, is a critical difference between the inter partes interference context and the ex parte application context. And so, plainly, the issues will be limited by the application that was before the agency. The claims that are subject to the action under Section 145 are, of course, the claims that were before the PTO. And so, in that sense, there is... It is not a wide open proceeding where an applicant could change the application or change the specification in order to try to obtain a patent. It is... And that's a limitation that comes directly from the language of the statute. Can I bring you back to your equitable estoppel suggestion? I'm wondering where in the statute or where that is grounded from because, quite frankly, it seems to be a new proposal as equally new as the government's proposal. I don't see a foundation anywhere for an exception for equitable estoppel, and I'm curious sort of where it came from. Thank you, Your Honor. I think that the equitable estoppel principle is not unique to Section 145. The point that we were trying to bring out is simply that Section 145 is as any other original action in equity. In any action in equity, there are the possible limitations on the position that a party could take in light of previous positions taken and relied upon. So, fairly early in the cases, there is a recognition of the possibility that an applicant could take a position before the PTO and then be estopped from taking an inconsistent position in an original action. That doesn't reflect anything particular about Section 145, but it's a limitation that would have been part of the traditional equity practice that would have been understood by Congress when they authorized the Bill of Equity and then reauthorized it and maintained it and then maintained it as a civil action. So there's nothing special about the 145 context that gives rise to the equitable estoppel. It's simply something that's part of equity practice, and I think it helps to explain the results of some of the cases that the government has relied on and the panel alluded to, for example, there. Should we take any parallelism between Section 145 and 146 and a similar proceeding from the interference results versus the rejection of a patent application? Well, I think that they have a common ancestor in Section 4915, Your Honor, and I think that there are many ways in which the two proceedings are going to be quite similar, but I think Judge Lurie alluded to the possibility that, and I think the reality that, an inter-party's proceeding, because of the nature of the adversarial process before the agency, is going to lead to a sharper definition of issues and is much more likely to lead to reliance by one of the parties on the position taken by the other in developing the case before the agency. So it is somewhat more likely, I think, that there will be a situation where, as a matter of equity, the scope of the proceeding under Section 146 may be somewhat more limited, and I think that that accounts for what ought to be a difference with respect to the possibility of raising what might be characterized as new issues. What about with respect to the evidence? I mean, in terms of the introduction of new evidence, do you view 146 and 145 as being the same? I think that in both circumstances, new evidence is permitted. The same standard? Same standard. In other words, the same limitations or lack of limitations apply in each case? I believe that's correct, Your Honor. Plainly, this is a case under Section 145. There are some differences in the wording of the statute, but I think that those differences principally reflect the effort of Congress to correct what had been some anomalies in the practice under Section 146 with respect to admission of the record before the agency. In other words, the practice had been that you couldn't bring in the record before the agency in general under 146? That's correct, Your Honor, that there had been some limitation on, or some courts had read a limitation on doing that, which required the parties to reintroduce evidence, and it was cumbersome, and so Congress made clear that that was not required. But I do think that with respect to introduction of new evidence under both Section 145 and 146, the rule is that it's admissible in accordance with ordinary equity practice. So in your view, I understand that you argue in your briefs that Mr. Hyatt had a rationale for doing what he did when he did it. But if hypothetically an applicant refuses a very reasonable request for information by the examiner because he just believes fallaciously in his mind that the examiner isn't going to give him a fair shake, and then he goes to the district court, and the district court says, why didn't you offer this up to the Patent Office? And he says, because I thought they were just going to be unreasonably unfair to me. In your view, would that be an exception, or should that person, that applicant, be permitted to introduce that evidence withheld from the PTO's request? Well, Your Honor, I think it's a fair question to wonder sort of where the line would get drawn in a case where the conduct before the agency could be taken as giving rise to an estoppel. I think in the case that you've alluded to, which is obviously a hypothetical one on these facts, there would be an issue as to whether there would be a bona fide response at all for the agency. It's clear under the statute that the applicant does need to pursue an appeal before the board. So arguably, in a case in which the applicant was found to have abandoned the application for failure to file a bona fide appeal brief, that could be a different circumstance. But that wasn't the case here. There was no suggestion before the PTO that the applicant didn't file a bona fide response to the final office action at all. And I understand that there's a dispute between Mr. Hyatt and the government as to the adequacy of the briefing. But it is far from the line that would give rise to any sort of estoppel. And indeed, I don't... Well, what is the line you think we should draw then? Abandonment? Well, abandonment... That's one instance where the evidence that he might have presented to the PTO... Well, I think that there is a body of law, of equitable estoppel law, that the district courts could draw on determining whether evidence would be admissible. As I say, this case is nowhere near the line. But what's the body of law? In your view, what line does that body of law suggest should be drawn? If somebody before the patent office says, I'm going to save my evidence, I'm not going to put it in here, I'm going to put it before the district court, that's okay in your view, isn't it? Well, I think that where there is a... At a certain point, and I think that this is where the particular cases will require the exercise of a court's equitable judgment, there could be... I don't know what that means. Are you saying somebody can appear before the patent office and say, I've got some evidence that I want to use, but I'm not going to put it in so that the patent office can consider it. I'm going to save it for the district court. Can somebody do that? Well, I don't think that they could say that. And let me try to explain. And I think that the Barrett case actually provides an illustration that there may be a circumstance in which there is such a focused demand for information, specific factual information and evidence within the applicant's possession, that the failure to produce it is in some ways a constructive representation of its non-existence. Now, I realize that may sound a little bit philosophical, but some of the cases in which district courts declined to consider evidence involve circumstances where there was a very focused issue, for example, regarding priority or anticipation, and where the patent office made repeated effective demands for any evidence in the patent, in the applicant's possession, that would establish the priority date that would give rise to a potential validity. And the patentee, or I should say the applicant, failed to produce that evidence consistently over the course of years in the face of focused requests. So then in the absence of a demand, he can hold back and sit on the evidence and not present it to the PTO? Well, I should say, there was no holding back here, but certainly there is no... No, what's the answer? I mean, can you hold back? If there's no demand from the patent office, you can sit on evidence and not present it to the PTO and bring it into the district court. Is that your position? Your Honor, I think my answer to that is yes. And let me say, my resistance is that obviously holding back sounds like... Counsel, wouldn't the alternative be dumping on the PTO everything in your possession? For example, on commercial success. Does the PTO really want every piece of evidence that arguably you as a company have on that point and in obviousness? That's right, Judge Moore, and that's really where I was going. One can say hold back, but the fact of the matter is that every patent applicant has to make a judgment about it. But if your judgment is, I think this is very pertinent, I'm going to use it in the district court and I'm not going to give it to the PTO, you're saying they can do that, right? Well, Your Honor, if the patent applicant... It's seemingly unlikely that that would occur and that is why the rule is not designed... Can they do it? Can they say this is very pertinent? I know I have it, but I'm not going to give it to the PTO. I'm going to wait for the district court. Can he do it? Yes, I believe that the proper standard would permit a patent applicant who had evidence that was pertinent to introduce it in the district court if there was no basis for us stopping him from doing so. Was there no withholding here because there wasn't actually evidence or was it just argument? Well, Your Honor, I think there certainly was no withholding here. And there is, I do think... Was there evidence? Yes, well, what the applicant offered before the district court certainly was evidence. And that is true because... What was the evidence other than pointing to the specification saying here is the support? It was evidence as to what a person of ordinary skill in the art would have understood from the specification. And that's actually very important evidence to be able to offer the district court. It's not necessarily so pertinent before the PTO. It's from the inventor whose application it was. That's right, and that sort of evidence, as Judge Moore actually pointed out in her dissenting opinion, inventor evidence about written description is admissible, is admissible evidence and expert testimony on written description is common. There are many, many cases from this court in which such evidence has been discussed. Counsel, I'd like your idea on this thought. Wouldn't district courts be free to give less weight to what looks like an ex post rationale that is developed by an inventor or sort of last minute evidence that seems to come out of nowhere? I mean district courts typically in civil actions allow in evidence but then the fact finder is of course free to accord less weight because the evidence seems less credible in light of its last minute introduction. And that would be something that I would think you would agree is perfectly proper under the circumstances. That is absolutely right, Your Honor. And indeed, many of the cases that the government relied on in their brief to suggest that evidence could have been excluded involve precisely that situation where evidence is proffered that is, you know, for example, evidence about the statement of a witness who has died in the interim, who cannot rebut it. And the district court, you know, quite sensibly says given that you could have offered this evidence before and did not do so, it's somewhat suspicious that you are now attributing to this dead witness. So if the district court here had said that, if he had said, Mr. Hyatt, I believe this would have been responsive to the request for information by the patent examiner and therefore I'm going to admit the evidence but I'm going to give it virtually no weight, would you have a basis to make an argument on appeal with respect to what the district court did? Well, I think that there would then be a question as to whether there was clear error on the findings of fact. There would be, you know, once the evidence is admitted and the district court makes a finding of fact with regard to the adequacy of the written description, that would then be reviewed by this court under the court-court clear error standard. And then we would have an argument about whether the evidence was sufficient to carry the burden that the plaintiff had to establish patentability. And that's what should have happened in front of the hearing. Mr. Panner, when new evidence is attempted to be admitted, who bears the burden as to whether that evidence falls on the right side or the wrong side of the line? Does the appellant have the burden to show that it's proper to submit the evidence or does the appellee, does the patent office have the burden to show that it is improper? Well, you know, the evidence would be admitted under ordinary evidentiary principles. I assume, let's leave aside for a moment any question on the federal rules of evidence. Let's assume it's otherwise competent evidence. With respect to the issue here, which would be, is there a basis for excluding otherwise competent evidence, say, under the principle of estoppel, the burden would rest squarely on the party attempting to establish the estoppel to try to establish that as a basis for excluding evidence. So that, you know, if the evidence is otherwise admissible and there's no claim that this was not. So your default is that everything is appropriate in a 145 action except that which the government can show is inappropriate. If it's otherwise admissible, that's right. So the only limit would be the rules of evidence limitation at that point. Rules of evidence, civil procedure, ordinary equity practice, that's right, Your Honor. So that is where the, you know, it's an ordinary bill in equity and it has been for a very long time. 145 was born as a bill in equity. Correct, Your Honor. So if in fact you had this evidence or could have presented the evidence before the Patent Office, and the Patent Office shows that in its proceedings and its objections, would that be sufficient to keep the evidence out as an estoppel basis, or would it be just admitted anyway and let the court weigh the value of the evidence at that point? It would be the latter, Your Honor. That there, because there is no principle under the traditional equity practice that any evidence not admitted before the agency would be excluded, there's no obligation on the part of the applicant to provide all of the evidence that could potentially be useful in a later proceeding before the agency. And the mere failure to provide evidence would not be a basis for exclusion. And that is really a principle that makes sense because the attempt to sort of look behind the rationale for the introduction of the, you know, why the evidence may have been or may not have been presented at the time before the PTO is a burden that needn't be undertaken in these proceedings. It is more efficient, as I think the court made a point, somewhat related point in Quigley-Newman. The district court can take in the evidence and decide the facts with respect to the issues that, you know, with regard to the patentability of the claims. You agree, I take it, that if there's no new evidence, then the task of the district judge is simply to determine whether substantial evidence supports the findings on the basis of the record by the PTO, correct, by the board? That's right. Now, does that change with the admission of any evidence? That is to say, the minute you introduce even the tiniest bit of evidence in the district court proceeding, then the entire proceeding becomes district court doing a de novo finding. Excuse me. With respect to everything, including all the evidence that was before the PTO, or does the district court still defer to those findings made by the PTO and simply make separate findings in light of the new evidence to the extent necessary to accommodate the new evidence? I think that's a fair question, Judge Bryson, and I don't think it's squarely presented here because the threshold issue was the admission of the evidence. I understand. As to what our position is on that, I think that as a practical matter, district courts are likely to give significant weight to what the agency, what they see from the agency record. But to the extent that we have to tell the district courts what to do, and are we telling them the minute there's a drop of new evidence, then everything changes, or are we saying the new evidence has to be assessed in light of what you've been doing previously and will do with respect to the substantial evidence deference with respect to the large body of evidence and the findings made by the board? Right. I think that what the district court should do is, to the extent there is new evidence going to a particular issue of fact, for example, it would be incumbent on the district court to weigh anew the evidence to evaluate all of the evidence anew and reach its own conclusion. The critical difference, I think, between the de novo standard and a deference standard is that in one case the district court has to reach its own conclusion. Now the district court presumably would look at the decision of the PTO and the argument put forward by the PTO in a 145 case and would give that appropriate weight and would look at the, you know, and consider the expertise of the fact finder. Simply as a matter of the district court weighing evidence. But it would be a de novo finding, which is quite different from the review of a finding of a district court based on the record that exists. That's really the significant difference, is it not, between our looking at the 145 issue now with the history of ZERCO and the patent office being placed under the APA where it was not when this entire body of judicial review arose. And I think that's still an interesting question, which may not have to be answered in this particular appeal, although more likely than not it does. I think it's the fundamental question underlying our taking this entire issue in bank. Not so much to try and draw fine lines based on hypotheticals because there's no legal issue in the world for which you can't find a fine line with a difficult answer on particular facts. But the question of whether in fact it's appropriate and intended to continue the traditional de novo fresh review that underlay the 30s or before. The sense that we're not comfortable with administrative agencies. A person with a property right is entitled to judicial review. Do you feel that we're answering that question? It was focused upon by Judge Bryson, I think, significantly. Well, Judge Newman, I think this court actually has addressed that question, not in bank, but in two prior cases, both in Frigo and then in Missouri, which was decided, of course, after ZERCO. That was before the APA intervened. Well, Missouri was after. But Frigo was before. Correct. Frigo was before, but Missouri was after. And I think that in both cases what got changed from Frigo was what happens if the record is the same. Frigo said, well, if the record is the same, we use the court-court clear error standard. And, of course, that is what ZERCO changed. So that now Missouri says, no, if it's on the same record, it is the substantial evidence APA standard. But both of those cases recognize, and quite consistently with the opinion of the Supreme Court of ZERCO, that where there is new evidence, the district court is a fact finder. That is, makes its own de novo findings. So the district court is making a decision. Now, how the district court makes that decision, what weight it gives, I think is going to depend on the particular case. You know, this is such a narrow issue, a question of patentability. We know the broad issues, 103, 112, whatever it is. To say that the district court reviews what it gets insofar as the office has a final decision for support by substantial evidence, looks at whatever additional information is presented, and then we review to see whether the district court correctly supported by a preponderance based on the court's, according to a substantial evidence standard, to the portion of the entirety which was decided by the office. It seems to me that in the mind of human beings, it doesn't work that way. Well, Your Honor, I'm not sure. I think that this case actually illustrates how it can work quite well. There was a focused issue, which was the adequacy of the written description for certain claim limitations. There was evidence that was introduced as to how particular elements in the specification and in the drawing should have been understood to describe those limitations, how they would have been understood by someone with ordinary skill in the art to provide that description. The district court should have looked at that evidence and made a factual finding based on the arguments and the evidence that the PTO would have introduced at trial as to whether that written description was adequate in light of what a person of ordinary skill in the art would have understood. Mr. Panner, would you like to retain your rebuttal time? I would, Your Honor. Thank you. Thank you, Your Honor. We'll move on to Ms. Brinkman. Chief Judge Rader, I may please the Court. Section 145 provides for judicial review of the Patent Office's rejection of a patent. It does not provide for a de novo trial, and it does not require admission of all evidence. Evidence that should have been presented to the Patent Office is excludable by the district court. That authority of the court is rooted in three sources of law. First, there's the text and structure of the statute and the Supreme Court's interpretation in Zirko and in Morgan. How about evidence that didn't exist during that time of the Patent Office's prosecution but could have? For example, laboratory testing that was resorted to later didn't exist. Would that have been excludable? It may be excludable. It also may be admissible. That's where the court has to look to determine whether there's a reasonable basis for not having presented it to the Patent Office. And that is consistent with what we think that the Morgan court would have done under the principles and law of equity at the time of that decision. The court made clear that the starting point is the record of the Patent Office. And it made clear that it wasn't just an appeal. This was in the nature of a motion to set aside a judgment. Well, in the context of the Morgan case, which had absolutely nothing to do with the introduction of evidence because neither party attempted at any stage to introduce any. So when the Supreme Court made the very equivocal statement, this is like a bill of review. It's for the purposes of that case and what that case is analyzing, right? Not for all purposes. That's right, Your Honor. What we rely on Morgan for is the poor nature of the proceeding. And, of course, Zerko then relied on Morgan. And Zerko was a case of... It was a standard of review. Well, it was an ex-party case. It looked to Morgan to see the nature and it also recognized that new evidence could be admitted. But it nowhere said that it was a de novo proceeding. And if you look, and I think as my opposing counselor suggests, he's relying on equity. We think there's equity at the time of Morgan that points to our standard. There's the law of administrative exhaustion and waiver that was developed under the predecessor statute 4915 in Barrett and its progeny. And also modern-day APA law and rules of waiver and exhaustion all point to our position for the district court's authority to exclude evidence that should have been before the Patent Office. And on Barrett, I'd like to say one thing I think that's critical about their equity argument. Core to that is their proposition that in Barrett the new evidence was sort of contradictory to the earlier evidence. I don't see that anywhere in the reading of that opinion. It had to do with whether or not it had been reduced to practice and before the Patent Office the evidence was about laboratory experiments and the company at that point had instructed some witnesses not to talk about commercial development or commercial success and then that was the evidence they tried to admit later. Doesn't mean it was contrary. It could have been very consistent and there may have been other reasons for not admitting that. So that does not support this rule that opposing counsel is trying to create about equitable establishment. I'm confused about what your rule is. You had a sweeping statement that lumped in Barrett, APA and everything else is supporting your rule. Yes. Well, I would think the APA would actually support a different rule than the one you proposed, an incredibly narrow rule. If we were to suggest the APA itself governed that wouldn't be consistent with the rule that you proposed for new evidence because the APA says no new evidence really absent really exigent circumstances. Oh, it doesn't say that, Your Honor. Tell me what the standard would be under the APA and how it supports exactly what you're articulating. I will do that. The APA makes quite clear that there's a statutory framework for agency action judicial review that governs. The APA has certain things about standards review that apply and one of the things that the APA recognizes first under Darby v. Cineros is that if there are rules of administrative exhaustion that the agency has, those have to be abided by. It's clear that the Patent Office has those. I believe it's 4713 or 31 3147 that says you have to raise all of your arguments before the Board. The statute here makes clear it has to be exhausted through the Board. And that's what would apply in a 141 type action before us, and in the Mazzari panel opinion in this case, interpreting Zerko, the Court, I think, very much answered Judge Bryson's question, in fact, because there there was both the record evidence, which this Court held was reviewed on the record under APA Section 7062E. E is the provision that says that an agency's judgment is reviewed on the record. It wasn't under F, which is the Denelvo standard. It was under E. E under the APA is on the record, and Mazzari held that for that that's a substantial evidence standard. In addition, when there's new evidence that comes in, and in some situations there is new evidence that comes in, we have no disagreement with that. But in those instances, it would be Denelvo review. What is the, give me some examples of when new evidence would be allowed under your standard. Something that was not there's not a reasonable ground for having failed to present it to the Patent Office is what is the standard we suggest for the District Court having the authority to exclude it. Is there a reasonable ground in this case? No, not at all. In fact, in this case, from the moment that the examiner put Mr. Hyde on clear, unequivocal notice that the examiner needed to have the parts of the specification identified to demonstrate the support for the claims. He was on notice, had this readily available. It's evidence that was certainly within his power. Just out of curiosity, how many rejections did the examiner make against Mr. Hyde's 117 claims? He, I don't know that number, Your Honor. 2,546. Is that normal? Would you understand that to be a normal number in a patent application? Well, I could tell you this. There was a 238 page specification here, and it took the board three weeks to go through it and they made clear they weren't relying on what Mr. Hyde gave to them. Mr. Hyde gave to them this matrix table of how many times words occurred on certain pages. You're looking quite quizzical, but actually back in the day when this patent was being prosecuted and Mr. Hyde proffered that table, was there computerized searchable capability in indexing the patent application? It doesn't matter. You're suggesting this table was unhelpful, but in fact if this table references exactly where in the spec you can find the precise language that the examiner is struggling with and if at the time there's no computer search capability and no indexing capability then why wouldn't that be helpful? I'm not suggesting it, Your Honor. That's what the board said. That's what the district court said that they said was not useful, and I think it's clearly demonstrated by what Mr. Hyde eventually did put together and try and present on rehearing belatedly after he had waved it before the board. It was much more detailed, much more analytical, and then when he presented to the district court all of that he could have presented to the examiner and certainly to the board. Was that their computer search capability? I don't know, Your Honor. It doesn't matter. Because if you look at what the board said and what the district court said, they needed to understand the support for the claims, not just know where a certain word appears. As I think the board or the district court explained, it's as if you had a dictionary and were suggesting that if you knew where the words in the dictionary was giving support to some argument. It's proven in this case, Your Honor, by what Mr. Hyde belatedly put together and tried to introduce in the district court. That's what he should have presented to the examiner. There's no reasonable ground for him not having presented that to the examiner, and I wanted to address Is it normal for there to be 2,546 rejections against a patent application? Do you find that, within your experience in the PTO, to be normal? I couldn't say, Your Honor. I can say that here there were 117 new claims that were not the original claims when the specification was originally filed, and the examiner, point blank, to Mr. Hyde, gave him every chance and every opportunity to provide that information that the examiner needed. And I wanted to get back to a point that had come up. But before we leave that point, I hear you saying that there is an obligation for an applicant to view the examiner and the board as if they were generalists with no technical background, and therefore to provide an explicit simplified, detailed statement as one would provide to a generalist judge who knows nothing about the technology, and not having done that, but having dealt expert to expert, as patent examination most of the time proceeds. The applicant, when he finally ends up in court before a generalist judge, is barred from elaborating in this way, as did Mr. Hyde, on the information that was before the office. Is that what I heard you say? No, Your Honor. If Mr. Hyde had presented his arguments and evidence concerning the support for the claims from the written description to the examiner... That's right. He was explicit. He pointed out to the judge exactly where the specific aspects were described, but the examiner is supposed to know that. That's what the examination is all about. He didn't provide that here. It was much more abbreviated than that. Very short. And it was clear, certainly by the time of the board from the Alton case, that once the examiner came forward, and with that rejection of prima facie, it was the burden on Mr. Hyde. Yes, it was tailored to the judge. It was the sort of thing that a busy trial judge in the federal system would need in order to understand and proceed to decide the case. It isn't the nature of patent examination. Judge Newman, I don't disagree that the district court needs it, but I do agree with you the latter. That is what the PTO needs. I mean, under opposing counsel's test, the PTO is deprived of what they need. For example, if there's commercial success that's material, the PTO needs that. And it can't be what Congress meant for the applicant to sandbag the PTO and go to the district court for at least three reasons. Certainly in this ex parte situation... Well, your premise that somebody who has a chance at obtaining the information from the examiner and the board and squanders 11 years on doing so would deliberately withhold information in order to have a few more years and a few more tens or hundreds of thousands of dollars, whatever it costs, in the district court, having withheld information that might have succeeded. Maybe there are people who do this, but I doubt if they... I can give you four situations in which that could arise. First of all, in scenarios of pre-GAD applicants like Mr. Hyatt, it's everything to gain from delay because his term starts from 17 years after issue. Well, but not anymore. This is such a minor case that it has this dependency. But so that reason won't apply to anybody other than Hyatt. A second category is the concern of applicants with prosecution history estoppel and the tendency to not want to make statements that could be used against them in later infringement litigation and seeing how far they can go without that. And then perhaps saying, well, now that I've got to district court, you know, I lost with that. I didn't get that so I'm going to have to now introduce it. That's another scenario where there's a lot of delay, even within the patent examination process. Those are outlandish scenarios. What we're trying to find is the way to handle patent applications in a way that's fair and just and accordance with the statutes and what the premise of Congress has been all along. And so in its wisdom, we have had for a long time this dual path of review. On the record, it goes to one court, the CCPA, and then this court. If you feel you can improve your record for whatever reason, you have another path, the standard path of review, which until recently went not only to the district court, but also to the regional circuit. Now the appeal comes here as well. What we need to put our minds to, and I would think what the government would need to put its mind to, is the separate purposes that are intended to be served by these separate paths and how to fulfill them, not how to defeat them. Your Honor, we thoroughly embrace that. We acknowledge that new evidence can be introduced into 145. We think the text and structure of the statute wholly support that. Also, we have the Supreme Court having definitively ruled in two instances, one more than 100 years ago, one within the past decade or so, on these issues, more than made clear, not about admissibility of evidence, but certainly about the proceeding and its interpretation of what Congress intended and that it was in the nature of a motion to set aside a judgment. As this Court has said, the operative nucleus is the administrative record. This is not a de novo trial. There is no requirement that all the evidence be admitted. The district court has the authority and indeed under now well-established doctrines of exhaustion and waiver and the PTO's own rules and the APA, has the authority to present evidence that should have been before the Patent Office and there's no reasonable reason why it wasn't presented there. So the first thing that happens is we have, as we have here, another few more years of arguing about whether it could have or should have or might have been provided to the Patent Office. I don't see how there's going to be any difference between what needs to be considered under opposing counsel's creative suggestion of collateral estoppel and maybe abandonment and some other things. We have rooted our analysis in how the Supreme Court has read the statute in the decades of development of law under 4915 and in current administrative procedure and the Missouri panel's recognition that there's substantial evidence review under 7062E for the record from the Patent Office and new evidence that can be admitted but not limitless new evidence ones that if it should not have been, if there was no reason, if there's a reasonable basis for not having presented it. How would you define the parameters of the new evidence? Would that be experiments that were conducted after the submission to the Patent Office after the PTO's board rule? What else would be available as new evidence? I think you'd have a rich vein of authority to look to. Both the Bill of Review and Equity and we should point out it's an original bill known as the Bill of Review. It's a type of Bill of Equity. It's not inconsistent with it being a Bill of Equity at all. We have the Barrett and its progeny. We have this court's rulings in Conservolite and also the D.C. Circuits in Lattin and Deseversky which all recognize these waiver rules both for argument and evidence I should say. And I think to give you some specific examples certainly prior art that was later discovered I think could be something that could be new evidence. There would be a question of whether there was adequate diligence. Back in the motion to set aside a judgment it had to have been reasonable diligence. You just can't. Well there can always be testimony, right? We wouldn't say there's a per se right for testimony. I think it would have to be where there is a reasonable ground for demonstrating that it would be testimony that would have been relevant and couldn't have been presented. I know no testimony can be presented to the examiner but in many instances declarations would be adequate because it's not a credibility issue. It's really the force of the argument. What about if Mr. Hyatt rather than submitting this stand and essentially say testify to everything that was contained in the declaration. Would that have been permissible? No. Why not? Because there would have been adequate opportunity for him to present that to the office. If he came and had some issue about reduction to practice and there was a question about credibility in a witness that could attest to this and said you know this is very important. I have a more than reasonable ground for not presenting that because the oral testimony is key here because of credibility. That I think would meet the test. But I don't think it's a blanket. Couldn't you make that argument any time there was oral testimony that a declaration could have been submitted? I think it depends on what the testimony and the oral testimony goes to. What the issue is. And in some instances there isn't any relevance about credibility going to it. There's corroboration. It's a statement of a chronology of what happened. But if he testifies as to how one skilled in the art would have read particular limitations in the specification is that the kind of thing that we would be allowed to have a credibility finding on? No, Your Honor. That is something that can be adequately presented and is fully provided for under the Patent Office rules. Ms. Spigman, a few minutes ago you started to answer a question by talking about three main points why you want a reading of 145. I don't know if that was already covered with your analysis of Morgan or not. So I just wanted to ask you. Thank you, Your Honor. The first is really the text and structure and how the Supreme Court has interpreted that in Morgan and Zirko recognizing that it's in the nature of motion to set aside a judgment. If you look at that body of law you will look to law that gives you the grounds for setting forth when new found of law there and it really had to be newly discovered evidence. If it had been readily discoverable with due diligence it would not have been admitted. We think that Zirko follows on that and embraces looking towards Morgan even for ex parte and in this court's Mazzari case it followed from that. The second source of law we would look towards this decades of development in the lower courts under 4915, under Barrett and many other cases. Those courts dealt in a very practical way with this issue and always had the agency record as the starting point. I mean there is no case to suggest this is the De Novo trial and that is out the window. I mean that would be directly contrary not just to Morgan but to the decades of the case laws of these judges struggling with this issue and you look and you see and in many of those cases they loosely use the words De Novo but as this court even said in conserva light De Novo did not need a De Novo trial and when you look at that they were struggling to say we have to make the review before the agency meaningful and to have it meaningful you have to have given the agency the opportunity to pass on this and I have to say it is particularly true in the ex parte scenario because if the evidence is properly presented to the examiner and the board there will be a patent issue and there will be no further appeal. It is even more important I would say to talk about 145 versus 146. It is more important than 145 scenario because it never goes to court if it is fully presented and the patent is granted. Well hypothetically what happens if the patent office finds a reference after the completion of the award proceeds? Can they introduce that patent reference at the 145 proceedings? Yes your honor that is and I forget which case it is but the scenario is if there was newly discovered art by the I think it would be the same determination but yes it could be if there was a reasonable ground for that. That means you have an unsymmetrical situation. The patent office can introduce new evidence but the applicant cannot based on your. No your honor it would have to fulfill the same standard. There has to be due diligence in both cases. Exactly your honor precisely. If there was a failure of due diligence in a prior patent this would not be admitted at that point. That's right it would not be. I have to say also your honor on the third round. I don't quite understand that because obviously that reference could always be used later against the patent itself if it is issued. What happens if the patent application issues and the patent is this very strong reference against it? Your honor Can the patent office issue a validity presumption of validity and question at that point? Well by the time that the 145 proceeding has occurred the board has already made its determination. The 145 proceeding is to review the action of the agency subject to this recognition of new evidence in certain limited situations and we would submit that if there was that type of new evidence and there was some question that there had not been due diligence it might be a scenario where there would be some kind of remand or further proceeding but we don't think that it is a avenue for all admissibility of evidence before the district court. The district court has the authority to exclude evidence that should have been before the board. Well the district court issued an order and then Davis against the commissioner issued a patent at that point after the completion of 145 proceedings. The mandate is actually to issue a consistent with law. It authorizes So it would issue a patent application as a patent with an outstanding reference out there that could invalidate it. Right? Is that correct? I'm not sure. I'm sorry your honor. Could you repeat your question? Well if the district court issues an order and mandates against the patent office to issue the patent application and the patent knowing that there is a valid reference against it at that point in time that the validity of the patent would be in question. Your honor, I've been informed that we actually have an obligation to reject the claims after the 145 action so whether the district court considers it, it would be it is available. So I guess that you could see that as an asymmetrical situation. I think it's really maybe compelled by the restrictions on the patent office in issuing a patent that is not valid. So as I understand it, the district court in the 145 action doesn't have the authority to order the issuance of a patent. That's right. So it has to go back to the agency and if there was some new part or new evidence that either side discovered that that could be brought before the agency after the district court action. That's right, your honor. Courts have long suggested that the court reviews are actually part of that patent process and the order that comes from the district court is one authorizing not mandating the patent office to issue the patent. I just want to come back to my third source of law to look to for this standard and it is the APA and the current 145 jurisprudence the requirements under the patent office for exhaustion and the rules of waiver if it's not the issue and evidence is not presented to the board before the reply brief and as we pointed out, we think the Missouri is fully consistent with that and recognizes that it's substantial evidence review under the APA 7062E but for new evidence it would be de novo determination and judge I think you have a point about the complexities of judicial review from there. Let me ask you this question about what your position means to the extent that it seems to me this is a shift from the practice the way it's been and certainly the way all of the amicus briefs have reported it. In most cases I think in the 145 the applicant provides technological information, comparative data, the applicant just doesn't turn up and argue it again to a different judge but does indeed come forward otherwise they go to the federal circuit and before that to the CCPA. So we have additional data, comparative data with the prior art. I think that's what's seen in the vast majority of 145 actions from what I hear you saying if in fact those experiments could have been run because it relates to prior art but hadn't been performed while the application was before the office the office would take the position that it's too late and it can't be provided in a 145 action which I think would affect the vast majority eliminate the vast majority of 145 actions would as many of the amicus briefs pointed out add to the expense before the applicant to conduct additional experiments even though the applicant is dealing with experts rather than the judge is that what I hear you saying that if in fact you go back perform additional experiments or may even have had the nucleus of them or some of them in your record and didn't file it before that you can be excluded from presenting it to the district court. The district court may be able to exclude it. It depends on determination about whether there was reasonable grounds for not having done that to the patent office. So it was expensive. Was that a reasonable ground? No, that would not be a reasonable ground. This would dramatically I believe change the present 145 practice. Now if this is one way perhaps of I don't know, cutting back on patent applications. Your Honor to the contrary we think that the opposing position would radically transform it. This would mean that cases where a patent could be issued, an applicant could stand back for commercial reasons, for prosecution of estoppel reasons because they think in this particular technology they have a better chance with the district court judge. You would stand back because of the nature of the submission. In one case to a non-technical judge. In the other case to an expert patent office. And there may be reasonable grounds in some instances Your Honor for excluding something further. You've just spent a few years fighting about it in order to get your evidence in. Well you've spent a lot of time and effort between the patent office who could have issued the patent if you had provided them this information with more technical expertise and more understanding of the intricacies of patent law. And to change that would mean that the patent office will now be wasting time on applications that are just going to have a total redo. They're going to be treated as a dress rehearsal. The federal court, district court judges are going to be left without the expertise of the patent office. And the patent office will be sending cases to the district court that never needed to go there because they would have granted the patent if they had the evidence. Excuse me. Your argument is that the 145 action is akin to a bill of review. A bill of review of what you argue should be a full and comprehensive agency determination with all of the evidence of record. If that's the case then should the patent office be permitted to raise a new ground of rejection in a 145 action? In the situation of a 145 generally new grounds of rejection arise when there often has been some kind of new evidence or argument that was allowed in the district court. And certainly once... My question is simply should the patent office be permitted to raise a new ground of rejection in a 145 action? Certainly if it would eventually be the scenario that went back to the patent office they were going to reject it on that ground anyway one would think that that would be the appropriate way to proceed so the district court is not wasting its resources in deciding that's something that would not eventually need to be decided. How is that consistent with the idea that this is akin to a bill of review? It would be a type of situation where you would have to look at I think in the same kind of setting aside a judgment under newly discovered evidence or a new ground that with reasonable diligence had not been appreciated earlier. We're not talking about new evidence. We're talking about a new ground of rejection. It seems to me to be entirely inconsistent with the notion of a bill of review. Well, one thing I just want to make clear here. We are not saying that new evidence and argument cannot come in a 145 proceeding. We agree with that. We think it's clear from the structure, the history and also may I continue Your Honor? I think my time is up. Your time, but please continue. Finish this question. We think that that is wholly consistent and important and crucial to the structure that Congress set up because of the difference between 141 and 145. Also, as you can see, there are many cases in which new evidence has come forward that have met standards, but it can't be that the District Court is without authority to exclude evidence that should have been before the Patent Office that contains the same arguments that were waived under the rules of the Patent Office and the APA. So, in that ground, I would say that a new ground for rejection would fall within a scenario where you can have new evidence and argument before the District Court, but it is not a trial de novo and is not a requirement for the District Court to introduce all evidence. Thank you. Thank you, Ms. Brinkman. Mr. Panner, would you add one minute to Mr. Panner and then we'll have about equal time. You have about five minutes, Mr. Panner. Thank you, Chief Judge Rader. In this case, the intent of Congress to provide for a remedy through a de novo trial, that is a trial that provides for the introduction of evidence to try to establish the patentability of the claims that were before the Patent Office is absolutely clear. The Bill of Equity has existed for 170 years. It was readopted by Congress in 1927. The legislative history is absolutely clear that this proceeding was intended to be a de novo proceeding with the introduction of new evidence. The suggestion that this and there is simply nothing in the legislative history that is to the contrary. How would you define new evidence at that point? Everything that's available and even before the Patent Office or any new evidence which was not available before the Patent Office? The evidence that is admissible, the fact that the evidence was not admitted before the Patent Office is not a grounds for exclusion and we've cited several cases in which new evidence and indeed new arguments were put forward in the Court. Later, Chief Justice Taft has a case from the Sixth Circuit in which he specifically says this argument about the fact that this could have been put before the Patent Office really is not because this is a new action. You can introduce new evidence. The same thing happened in the Curtis case decided by the Second Circuit which we've cited and when you look at the legislative history of the 1927 Act where Section 4915 was revised again, every witness who spoke to this including the Commissioner of the Patent Office indicated that this was a new proceeding in which evidence could be admitted in accordance with the ordinary... There was no suggestion that evidence couldn't be admitted. I'm concerned about oral testimony that involved issues of credibility. But, Your Honor, what is utterly lacking is any suggestion that the failure to introduce a particular type of evidence before the Patent Office would have been, in general, a basis to exclude it in the new action. There is no principle in equity and nothing in the legislative history to support that suggestion and the suggestion by the government that this is going to lead to bad consequences, I think, is frankly fanciful. How could it not lead to bad consequences? What you're doing is you're saying the Patent Office is not going to have the opportunity to see this evidence and to bring its expertise to bear. You're precluding the Patent Office from reaching its best judgment on this and you're precluding the District Court from getting the best judgment of the Patent Office. First of all, that's not correct, Your Honor, as a technical matter because the Patent Office will be a party in the District Court and will certainly bring its best expertise to bear. But furthermore, as a party in that... As the District Court says, it's well established that agency counsel don't speak for the agency in that respect. The agency's judgment is the agency's judgment reached by the Board and the examiner. That's true, but Your Honor, the point that I wanted to make in terms of the ability of the Patent Office to bring its expertise to bear, the patent applicant has every incentive to diligently pursue the evidence that this applicant did. The idea that this was somehow evidence that this was held from the Patent Office is simply false. The Board's decision gave a focused explanation for the rejections that was simply lacking from the examiner's rejection. And I think Judge Moore has very accurately portrayed the context in which this decision by the Board was made. There was... But would Mr. Hyatt's affidavit have been presented to the Patent Office? There would have been no reason... First of all, Mr. Hyatt made... Could it have been presented to the Patent Office? I don't know whether technically under the rules it could have been done. Mr. Hyatt did present in his rehearing petition the focused argument. Indeed, the PTO has conceded that in the rehearing petition, Mr. Hyatt presented what they argue should have been presented at an earlier point, and the Patent Office disregarded it. So there's no question of somehow trying to pull the wool over the eyes of the office. What it is, was important for Mr. Hyatt to, or I should say, the plaintiff to present not necessarily in his own affidavit, but as evidence, was evidence regarding what would have been understood by someone with ordinary skill in the art. That is not evidence that would have been required before the Patent Office because the Patent Office is presumed to have that skill and to understand, to be an expert in the art that is being presented. And so in this circumstance, this actually illustrates why the introduction of new evidence is entirely justified. Thank you, Mr. Panner. I think your time's expired. Thank you, Your Honor. The Court thanks both Mr. Panner and Ms. Brinkman for their assistance today. Our next case is Slavite States. SLAVITE STATES SLAVITE STATES SLAVITE STATES SLAVITE STATES SLAVITE STATES           SLAVITE STATES SLAVITE STATES SLAVITE STATES SLAVITE STATES           SLAVITE STATES SLAVITE STATES SLAVITE STATES           SLAVITE STATES SLAVITE STATES SLAVITE STATES SLAVITE STATES